IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEYSTONE HOSPITALITY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-CV-0084-DGK |
| | ) | |
| JAKE LANDERS, TRIMARK USA, LLC, | ) | |
| GREGG H. ADAMS, | ) | |
| STRATEGIC EQUIPMENT, LLC, | ) | |
| STEVE PARKER, FREDDY LUSTER, and | ) | |
| FOCUS BRANDS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

This lawsuit is the third lawsuit arising out of a breached restaurant lease. Plaintiff Keystone Hospitality, LLC ("Keystone"), a landlord, unsuccessfully sued its tenant, Capitol Food Group, LLC, in Missouri state court for allegedly breaching their lease.[1] After losing in Missouri state court, Keystone then filed suit in Georgia against various third parties—the Defendants in this case—alleging their actions caused Capitol Food Group, LLC to breach the lease. After Defendants moved to dismiss the Georgia case, Keystone dismissed that lawsuit and then refiled it in Missouri state court. Defendants then removed it to this Court.

Now pending are Defendants' motions to dismiss for lack of personal jurisdiction, failure to state a claim, and collateral estoppel. ECF Nos. 32, 34. Finding this Court lacks personal jurisdiction over Defendants, the motions are GRANTED.

---

[1] Capitol was a defendant in a prior case brought by Keystone that was the subject of a three-day bench trial in the Circuit Court of Johnson County, Missouri. *Keystone Hospitality, LLC v. Capitol Food Group LLC, et al.*, Case No. 19JO-CC00394. In that case, Keystone asserted claims against Capitol for breach of contract and promissory estoppel. The court found in Capitol's favor.

## Standard

Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing an obligation or duty over that defendant. *Viasystems, Inc. v. EBM Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (internal quotation marks omitted). "Personal jurisdiction can be specific or general. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id*. at 592. Here, Keystone is proceeding under a theory of specific jurisdiction. Suggestions in Opp'n to Trimark Defendants' Mot. to Dismiss at 10, ECF No. 64; Suggestions in Opp'n to Focus Defendants' Mot. to Dismiss at 12, ECF No. 65.

"Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Id*. at 593. Thus, in order for this Court to exercise personal jurisdiction over Defendants: (1) Missouri's long-arm statute must be satisfied; *and* (2) Defendants must have sufficient contacts with Missouri to satisfy due process concerns. *Id.* Although similar in nature, these are separate inquiries. *Viasystems*, 646 F.3d at 593 n.2 (citing *Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 231 (Mo. 2010)).

With respect to the first requirement, Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business or commit a tort within the state. *Viasystems*, 646 F.3d at 593 (citing Mo. Rev. Stat. Section 506.500.01).

Turning to the second requirement, due process requires that there be "sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant

with such contacts may not offend traditional notions of fair play and substantial justice." *Aly v. Hanzada for Import & Export Co.*, 864 F.3d 844, 849 (8th Cir. 2017) (citations and internal quotation marks omitted). That is, "[a] defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820-21 (8th Cir. 2014) (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). "Sufficient minimum contacts requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id*. at 821 (citation and internal quotation marks omitted). In assessing a defendant's minimum contacts with the forum, courts in the Eighth Circuit consider five factors: (i) the nature and quality of the contacts, (ii) the quantity of the contacts, (iii) the relationship of the cause of action to the contacts, (iv) the interest of the forum state in providing a forum to its residents, and (v) the convenience to the parties. *Hanzada*, 864 F.3d at 849. Courts give "significant weight to the first three factors." *Id*.

To defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that the court possesses personal jurisdiction over the defendant. *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021). "The evidentiary showing required at the prima facie stage is minimal." *Bros. and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022). The plaintiff must show facts sufficient to support a reasonable inference that the defendant is subject to personal jurisdiction in the state. *See id*. In making this determination, a court considers not only the pleadings, but also affidavits and exhibits. *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020). The court views the facts in the light most

favorable to the nonmoving party and resolves all factual conflicts in favor of the nonmoving party. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

## Factual and Procedural Background

For purposes of resolving the pending motions, the Court finds the facts to be as follows.

**Background of the Schlotzsky's and Cinnabon system and franchise agreements.**

Schlotzsky's and Cinnabon (collectively, "the Franchisors"), together with their affiliates (including their 100% owner, Focus Brands, LLC ("Focus")), own a proprietary business and restaurant system ("the System") which allows independent, third-party franchisees to operate as Schlotzsky's and Cinnabon restaurants, which are sometimes—as in this case—operated at a single, co-branded location. The System includes Franchisors' federally registered trademarks and various standards, specifications, and procedures that are distinctive and proprietary to Schlotzsky's and Cinnabon restaurants. In exchange for the right to operate these franchise restaurants, franchisees pay the Franchisors various fees, including royalties based on sales.

On March 22, 2019, Capitol Food Group, LLC ("the Tenant") as franchisee and the Franchisors entered into the two separate Franchise Agreements whereby the Tenant agreed to develop and operate the co-branded Schlotzsky's/Cinnabon restaurant in Warrensburg, Missouri. The Franchise Agreements allowed the Franchisors and their affiliates (including Focus) to control various aspects of the construction and operation of the restaurant to ensure that it looks and feels like a Schlotzsky's/Cinnabon restaurant, and that it otherwise meets the Franchisors' brand standards related to appearance. Among other things, the Franchise Agreements require that the Tenant: (1) hire a general contractor acceptable to the Franchisors; (2) follow the Franchisors' architectural plans; and (3) purchase only furniture, fixtures, and equipment ("FF&E") from suppliers approved by the Franchisors, including the Franchisors' affiliates.

The Franchise Agreements impose certain other obligations on the Tenant, such as selecting a site for development, signing a lease acceptable to Franchisors, and completing construction and opening by a certain deadline. The Franchise Agreements also require the Tenant to sign a lease with certain "material terms specified" by the Franchisors and prohibit the franchisee from executing a lease that is inconsistent with any term of the Franchise Agreements. The Franchise Agreements also set forth the deadline by which the Franchisors must approve the Tenant's proposed site, the deadline by which construction must start, and the deadline by which the restaurant must open. If the Tenant fails to comply with these requirements, the Franchisors may (but are not obligated to) terminate the Franchise Agreements.

The Franchisors and Focus have an economic interest in franchisees meeting their development schedules because the Franchisors do not receive royalties (which are based on sales) until the restaurant opens for business. The Franchisors and Focus also have an economic interest in ensuring that the franchised restaurants are constructed and furnished in accordance with their standards because the value of the Schlotzsky's and Cinnabon endeavor depends on franchisees meeting the System's standards for uniformity and quality.

**Keystone's obligations to purchase FF&E under the Lease and Keystone's attempts to obtain special concessions to purchase the FF&E.**

On July 10, 2019, the Tenant signed the Lease with Keystone to develop the co-branded Schlotzsky's/Cinnabon restaurant at the Property. Under the Lease, Keystone assumed the obligation of ordering and installing the FF&E at the Property as specified by the Tenant, as well as paying for it, up to a maximum of $300,000. The Lease was contingent upon Keystone's ordering and installing the FF&E.

In August of 2019, the Tenant's principal owner Darin Frantz, a Missouri resident, reached out via email to TriMark USA, LLC employee Jake Landers ("Landers") to begin

developing a quote for the FF&E purchase. TriMark USA, LLC and its affiliate Strategic Equipment, LLC are two of the Franchisors' approved suppliers from which franchisees could obtain approved the FF&E pursuant to TriMark's standard purchase agreement. TriMark USA, LLC and its affiliate Strategic Equipment, LLC (collectively "TriMark") are both Delaware limited liability companies doing business in Georgia. Landers is a Georgia resident who works for TriMark in Georgia.

On September 4, 2019, Frantz emailed Landers again, reminding him, "I need your proposal for this location." Landers emailed Frantz back a quote on TriMark letterhead that same day.

On September 5, Frantz emailed Landers asking him, "Did you send me a new proposal with the drive thru menu board and canopy?" The next day, Landers sent a revised quote to Frantz asking him to "let me know if you have any questions." A few hours later, Frantz emailed Landers back, accepting the quote and writing, "I will have the deposit sent to you." Landers replied, "Got it, thank you. Any idea when you want us to install?" Frantz immediately answered October 28th.

On September 10, Frantz emailed Landers asking him, "Can you make sure the [FF&E] items that are not highlighted [in the bid] are included? We will serve Beer and I need all the table and chairs."

On September 11, Frantz emailed Landers again. He wrote, "Jake, I am having this store built for me by a developer. He has requested to pay your invoice after they have received everything to insure that the FFE is on site and in good working order. Is this possible?" Landers replied to Frantz that day, "Hey Darin, Our police and contract with Focus Brands

clients requires 50% deposit and 50% before we deliver. Let me know if you need any further information."

On September 13, Keystone's owner Jerry Franklin, a Missouri resident, emailed Landers and Frantz. Introducing himself as "the build to suit-lease developer and Landlord for Darin Frantz and his Schlotzsky's in Warrensburg, Missouri," Franklin sought to renegotiate the purchase terms for the FF&E from TriMark. Among other things, Franklin wrote he "needed" "a Contract for services and goods" and a liquidated damages clause in case the equipment was not delivered on time. Franklin's email also rejected the prepayment provision, advising Landers, "If you need further guarantees, I suggest that you look to the franchisee and/or the franchisor to put up a credit card to guarantee timely payment(s) . . ."

Landers emailed Franklin and Frantz a short time later. He wrote, "I am looking into this as we have a contractual agreement with Focus Brands (not just Schlotzsky's) on terms, I will get back with you." A few minutes later, Landers emailed Franklin: "Hey Jerry, I just spoke with Focus Brands, and our terms are non-negotiable. . . . My apologies for any inconvenience. Please send me the deposit ASAP so we can meet the delivery request below. Let me know if you have any questions."

About an hour later, Franklin emailed Landers:

> Jake,
>
> We have work to do before any deposit, if at all. I need your Proposal for all the equipment, specs., price, delivery charge, drop dead date, liquidated damages if not delivered on time and allowance if not delivered in, undamaged condition. I'm paying interest. I don't get rent until Schlotsky's is open for business.
>
> Does your company pay you in advance? Does your company pay you if you don't show up? Of course not. Does your company

> have a line of credit? Does your company have inventory on hand?
>
> If I build anymore restaurants, I'll be looking for a more reasonable vendor.

A short time later, Frantz sent an email to Franklin with a copy to Landers. It stated:

> Jerry,
>
> Unfortunately this is the way we must proceed. Actually, most of the vendors we use require 100% payment before they ship. There are others I sent you that are that way. This is the way each Schlotzky's store works . . . right or wrong, there is nothing we can do about it.
>
> To make sure the project is not delayed, he needs to receive payment ASAP.

In the few subsequent emails, Franklin continued to try and engage Defendants and the Schlotzsky's venders in negotiations via email, but TriMark refused to budge. At some point, Landers began reminding Franklin that Keystone's customer was the Tenant, not TriMark, so Franklin should direct his communications to Frantz.

Ultimately, Keystone refused to purchase and install the FF&E for the Property.

On September 20, 2019, the Tenant advised Keystone it was terminating the Lease. In response, Keystone declared that the entire balance of all rent payments was immediately due and payable.

**Keystone loses the First Missouri Lawsuit**

On December 10, 2019, Keystone filed suit against the Tenant in the Circuit Court of Johnson County, Missouri (the "First Missouri Lawsuit") seeking rent allegedly owed under the Lease. On July 21, 2023, after a three-day bench trial, the Circuit Court ruled in the Tenant's

favor, finding Keystone's "failure to obtain the FF&E was a material breach of the Lease," and that Keystone was therefore "unable to enforce the Lease" against the Tenant.

**Keystone then sues Defendants in Georgia**

On September 18, 2023, Keystone filed a lawsuit concerning the Lease in the Superior Court of Gwinnet County, Georgia (the "Georgia Lawsuit") against various third parties related to the Lease transaction. These parties are:

1. Focus, which is the 100% owner of the Franchisors and which provides support services to those Franchisors;

2. Steve Parker ("Parker") and Freddy Luster ("Luster") (collectively with Focus "the Focus Defendants"), both former employees of Focus who were responsible for providing real estate and development support to franchisees (such as Tenant) on behalf of Focus and the Franchisors;

3. TriMark USA, LLC and Strategic Equipment, LLC; and

4. TriMark employees Landers and Gregg Adams.

These are the same parties (collectively "Defendants") Keystone has named in this lawsuit.

Both Luster and Parker are Georgia residents who operated out of Focus's headquarters in Atlanta, Georgia. Neither Luster or Parker have ever had an office in Missouri, have ever worked in Missouri, have ever resided in Missouri, or maintain bank accounts or own property in Missouri. Neither Parker nor Luster negotiated with or initiated any communications with Keystone in Missouri. In fact, Luster and Parker rebuffed Keystone's attempts to bring the Focus Parties into its negotiations with the Tenant and the other Defendants. For example, Parker responded to emails from Franklin by emailing messages back like:

- "Jerry, [y]ou need to copy Darren [Frantz, the Tenant's principal] on these emails as he is Focus Brands franchisee. He is in control of this project."

- "Jerry, what I am suggesting is you talk to Darren about your questions. Thanks."

- "Jerry, Focus Brands has a relationship with Darren for this location and not the Landlord. All questions should be directed to Darren at this time."

- "Jerry, [s]imply put, that is between you and Darren. We are not a party of your lease."

The Georgia Lawsuit, like the present lawsuit, alleged that Defendants tortiously interfered with the Lease by refusing to sell Keystone the FF&E it was required to provide Tenant under the Lease.

After Defendants moved to dismiss the Georgia Lawsuit for failure to state a claim on October 19, 2023, Keystone voluntarily dismissed it on November 15, 2023.

On December 15, 2023, Keystone filed the pending lawsuit in the Circuit Court of Johnson County, Missouri. Defendants subsequently removed it to the Western District of Missouri.

**Argument**

Defendants contend Plaintiff's claims must be dismissed because (1) this Court does not have personal jurisdiction over the Defendants; (2) Plaintiff fails to state claims upon which relief can be granted; and (3) Plaintiff's claims are barred by collateral estoppel. Because the Court holds it does not have personal jurisdiction over Defendants, the Court grants dismissal on this basis and declines to address Defendants' remaining arguments.

## I. The Court lacks personal jurisdiction over Defendants.

### A. The Court lacks personal jurisdiction over the TriMark Defendants.

As noted above, this Court can exercise personal jurisdiction over Defendants only if Missouri's long-arm Statute is satisfied *and* Defendants have sufficient contacts with Missouri to satisfy due process concerns. Assuming for the sake of argument that Missouri's long-arm statute is satisfied here, Defendants do not have sufficient contacts with Missouri to satisfy due process.

The touchstone of the due process analysis is whether there are sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant does "not offend traditional notions of fair play and substantial justice." *Hanzada*, 864 F.3d at 849. Sufficient contacts exist when a non-resident defendant can "reasonably anticipate being haled into court there." *Fastpath*, 760 F.3d at 820-21.

As set forth above, the TriMark Defendants' contacts with Missouri consist of a handful of emails and telephone calls between Landers and Plaintiff, almost all of which consist of Plaintiff reaching out to Landers to attempt to get TriMark to negotiate directly with Plaintiff, something TriMark consistently refused to do. This smattering of rebuffed overtures is insufficient contact to satisfy due process.

At the outset, the Court observes the contacts in this case are weaker than those found insufficient for personal jurisdiction *Viasystems*. In that case, the Eighth Circuit reasoned that the defendant's contacts with Missouri, which consisted of "scattered emails, phone calls, and a wire-transfer of money to [plaintiff] in Missouri," were "incidental contacts" which did not constitute a "deliberate" and "substantial connection" with the state such that the defendant could reasonably anticipate being haled into court there. *Viasystems*, 646 F.3d at 594. On the contrary,

11

these communications were "just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Id.*; *see also Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (holding that 100 telephone calls by defendant to plaintiff were "insufficient, alone, to confer personal jurisdiction").

Applying the Eighth Circuit's five factor test confirms this result. The first factor—the nature and quality of the contacts—weigh against personal jurisdiction because Plaintiff initiated almost all, if not all, of the contacts; almost all of the contacts were very brief; and the interactions during these each of these contacts was de minimis. The recurring element in each contact is Plaintiff reaching out to establish a negotiating relationship with TriMark, and TriMark declining Plaintiff's invitation. The second factor—the number of contacts—is also too few. No matter how the communications are counted,[2] there are very few, perhaps ten emails. As for the third factor, the relationship of the cause of action to the contacts, it is paradoxical or inverse: Keystone is trying to sue TriMark for refusing to negotiate with it, behavior Keystone characterizes as tortious interference. But the fact that TriMark repeatedly declined Keystone's attempts to engage with it weigh against personal jurisdiction. Hence, the three factors that weigh most in the analysis weigh against personal jurisdiction.

As for the last two factors, the interest of the forum state in providing a forum to its residents and the convenience of the parties, these factors split. Missouri has an interest in providing a forum to Keystone as one of its residents, just as Georgia has an interest in providing a forum for Defendants, multiple individuals and businesses who live and operate in the state.

---

[2] For example, after Franklin emailed Landers rejecting several terms in TriMark's standard FF&E contract, trying to get TriMark to renegotiate the contract for Keystone, Landers quickly wrote back, "I am looking into this as we have a contractual agreement with Focus Brands (not just Schlotzsky's) on terms, I will get back with you." A few minutes later, Landers emailed Franklin back, "Hey Jerry, I just spoke with Focus Brands, and our terms are non-negotiable. . .." Whether this is one contact or two, it is de minimis.

But the convenience of almost all the parties is for this case to be heard in Georgia, not Missouri, where almost all of the witnesses are located.

Thus, the five factor test weighs against this Court possessing personal jurisdiction.

Plaintiff's primary reliance on this Court's ruling in another case, *KC Ravens, LLC v. Micah Energy Corp.*, No. 4:13-00870-CV-DGK, 2014 WL 4471395, at *4 (W.D. Mo. Sept. 11, 2014), as support for its argument is unavailing. *KC Ravens* is inapposite because in that case the defendant formed a contract with the plaintiff, the defendant sent false statements into the state, and the defendant was physically present in the state when it formed the contract with the plaintiff. None of these things happened here.

### B. The Court lacks personal jurisdiction over the Focus Parties.

Turning to the Focus Defendants' motion to dismiss for lack of personal jurisdiction, their motion is even stronger. Their contacts with Missouri are fewer and more attenuated than the TriMark Defendants' contacts. Almost all of the Focus Defendents' interactions with Keystone are reminding it that Focus was not a party to any contract with Keystone, and that Keystone should direct its concerns to the Tenant.

Plaintiff's response to the Focus Defendants' arguments concerning personal jurisdiction is devoid of specifics, conclusory, and relies on *KC Ravens*. *See* Suggestions in Opp'n. at 16-17, ECF No. 65.

Accordingly, the Court's analysis is the same: The Court lacks personal jurisdiction over the Focus Defendants.

### Conclusion

For the reasons discussed above, Defendants' motions to dismiss for lack of personal jurisdiction are GRANTED. The Court does not address Defendants' remaining arguments.

**IT IS SO ORDERED.**

Date:  August 19, 2024             /s/ Greg Kays
                                   GREG KAYS, JUDGE
                                   UNITED STATES DISTRICT COURT